*Latoya Bonte Elzey v. State of Maryland*, No. 1131, September Term, 2018, Opinion by Raker, J.

**CRIMINAL LAW – BATTERED OR ABUSED WOMEN, SPOUSES, OR DOMESTIC PARTNERS**

**HOMICIDE – SELF-DEFENSE**

Pursuant to Maryland Code, Courts and Judicial Proceedings, § 10-916(b), once a trial court determines that the defendant has adequately raised the issue of Battered Spouse Syndrome, it has the discretion to admit the evidence of repeated abuse of the defendant by the victim and expert testimony on Battered Spouse Syndrome. The jury can then consider that evidence as it bears on the defense of self-defense without first making (and agreeing upon) a predicate finding that the defendant was the subject of repeated physical and psychological abuse by the victim.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1131

September Term, 2018

LATOYA BONTE ELZEY

v.

STATE OF MARYLAND

Arthur,
Friedman,
Raker, Irma S.
    (Senior Judge, Specially Assigned),

JJ.

Opinion by Raker, J.

Filed: November 22, 2019



Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.

Suzanne C. Johnson, Clerk

Appellant Latoya Bonte Elzey was convicted by a jury in the Circuit Court for Wicomico County of voluntary manslaughter, second-degree assault, and reckless endangerment. Appellant presents the following questions for our review, which we have re-ordered as follows:

1. Did the trial court err in instructing the jury that, in order to consider expert testimony on Battered Spouse Syndrome, it first had to make a finding that Ms. Elzey "was a victim of repeated physical and psychological abuse by the victim"?

2. Did the trial court err in instructing the jury that Battered Spouse Syndrome is caused by "repeated physical and psychological abuse *by [the] victim*," which in effect precluded the jury from considering expert evidence as to whether Ms. Elzey suffered from Battered Spouse Syndrome as a result of abuse in prior relationships?

3. Did the trial court abuse its discretion by entering into evidence a prejudicial photograph when other photographs more clearly depicted the relevant information and did not contain the prejudicial depictions?

4. Did the trial court err in refusing to excuse a juror who expressed an "ethical dilemma" with disregarding information that was not in evidence?

5. Could any of the above-described errors, either individually or cumulatively, have influenced the jury verdict?

We shall hold that the trial court's Battered Spouse Syndrome instruction was erroneous and unclear. Accordingly, we shall reverse and remand for a new trial.[1]

---

[1] Because we shall reverse on the issue of the Battered Spouse Syndrome instruction, we do not address appellant's other issues.

I.

Appellant was indicted by the Grand Jury for the Circuit Court for Wicomico County on charges of first-degree murder, second-degree murder, voluntary manslaughter, first-degree assault, second-degree assault, and reckless endangerment. The jury convicted her of voluntary manslaughter, second-degree assault, and reckless endangerment. The court merged the second-degree assault and reckless endangerment convictions into the voluntary manslaughter conviction for sentencing purposes and sentenced appellant to a term of incarceration of ten years for voluntary manslaughter.

On May 22, 2017, appellant and her boyfriend, Migail Hunter, were fighting in the living room of a friend's home where they were staying temporarily. As the fight continued, appellant told Mr. Hunter "don't put your hands on me" and "I'm tired of you putting your f****** hands on me," went to the kitchen, and grabbed a knife. The friend, however, dissuaded appellant from taking the knife back to the living room. As the fight escalated, appellant went back to the kitchen and returned with a knife. She told Mr. Hunter to stay away from her and that she did not want to use the knife. Undeterred, Mr. Hunter continued to approach her. Appellant testified that she held the knife loosely in front of her and turned her head away from Mr. Hunter, at which point he "lunged forward and stabbed himself in the chest" or walked into the knife. Although the wound was just one inch long, one-sixteenth of an inch wide, and two inches deep, it punctured Mr. Hunter's aorta. He died shortly thereafter.

The central issue at trial was whether appellant acted in self-defense. Appellant's position was that she acted reasonably under the circumstances as she experienced them

because she suffered from Battered Spouse Syndrome, sometimes referred to as Battered Woman's Syndrome.[2] Appellant's medical psychiatric expert Dr. Neil Blumberg testified, *inter alia*, that he found, based on the totality of appellant's past abusive relationships, that appellant suffered from Battered Spouse Syndrome. Dr. Blumberg noted that appellant's relationship with Mr. Hunter was merely the latest in her long history of abuse.

Defense counsel submitted a proposed jury instruction on Battered Spouse Syndrome that read as follows:

> "If you find, based on the testimony presented, that the defendant suffered from Battered Woman's Syndrome, you may consider how the effects of this condition may have altered the defendant's mental state. Specifically, you may consider this evidence in deciding whether the defendant actually believed that she needed to defend herself against an imminent threat and whether that belief was reasonable based on all the facts and circumstances as they have been made known to you by the evidence and the testimony in this case.
>
> You may consider whether the presence of Battered Woman's Syndrome altered the defendant's perceptions and beliefs, including her perceptions and beliefs about the danger of the threat posed to her and that the danger was imminent.
>
> You must determine the reasonableness of the defendant's belief and actions based on those beliefs in light of the circumstances as they appeared to the defendant at the time of the killing, and as they are evaluated by you now. Reasonableness is based both on the defendant's beliefs and on your evaluation as to their reasonableness.
>
> If the defendant presents credible evidence of self-defense, the

---

[2] Battered Spouse Syndrome is "the psychological condition of a victim of repeated physical and psychological abuse by a spouse, former spouse, cohabitant, or former cohabitant which is also recognized in the medical and scientific community as the 'Battered Woman's Syndrome.'" Maryland Code, Courts and Judicial Proceedings, § 10-916(a)(2).

State must prove beyond a reasonable doubt that the defendant did not act in self-defense. If you have a reasonable doubt as to whether or not the defendant acted in self-defense, your verdict must be not guilty."

Instead, the court instructed the jury[3] using the instruction on "Self-Defense: Battered Woman Syndrome" in § 8.13(G) of DAVID E. AARONSON, MARYLAND CRIMINAL JURY INSTRUCTIONS AND COMMENTARY (2014–2015 ed. 2015) as follows:

"Ladies and gentlemen, you have heard evidence that the Defendant was a victim of repeated physical and psychological abuse. You have also heard from an expert witness that *a person who is a victim of repeated physical and psychological abuse by a victim may suffer from a psychological condition called Battered Spouse Syndrome.* You have also heard expert testimony that the Defendant exhibits the characteristics consistent with Battered Spouse Syndrome. *You must determine, based upon a consideration of all the evidence, whether the Defendant was a victim of repeated physical and psychological abuse by the victim, and if so whether she suffered from Battered Spouse Syndrome.*

If you determine that the Defendant suffered from Battered Spouse Syndrome then you should consider this evidence for the purpose of explaining the Defendant's motive or state of mind, or both, and her beliefs and perceptions at the time of the commission of the alleged offense in order to determine whether the requirements of self-defense exist. Specifically you may consider this evidence in determining: one, whether the Defendant actually believed in the necessity to use deadly force to defend herself against imminent or immediate danger of serious bodily harm or death; two, the reasonableness of the Defendant's belief that she was in imminent or immediate danger of serious physical harm or death. In assessing reasonableness the issue is whether a reasonable person in the Defendant's circumstances would have perceived or seen a threat of serious physical harm or death. Three, the reasonableness of the force used by the Defendant in response

---

[3] MARYLAND STATE BAR ASS'N, MARYLAND CRIMINAL PATTERN JURY INSTRUCTIONS (2nd ed. 2018) does not contain an instruction related to Battered Spouse Syndrome.

4

to the perceived threat; and four, in evaluating the believability or credibility of the Defendant's testimony.

Evidence of Battered Spouse Syndrome is not in itself a defense to the crime of murder in the first and second degree, assault in the first and second degree and reckless endangerment. It has been admitted to assist you in determining whether the requirements of self-defense are present in this case."

Defense counsel objected to the court's proposed instruction as follows:

"[DEFENSE COUNSEL]: Your Honor, the only . . . change that the defense was planning to suggest was the language with regard to abuse by the victim. Because of *Wallace-Bey v. State*[, 234 Md. App. 501, 172 A.3d 1006 (2017)], . . . we offered . . . two suggested . . . instructions, one of which would indicate by the victim and others, but the other would just say, repeated physical and psychological abuse period, without indicating specifically as to by whom.

THE COURT: Well, would it be necessary under your understanding of the law that *[the jury] be convinced that there was repeated physical and psychological abuse by the victim*? *Because it seems to me that that's a requirement.* It's also true that there could be . . . others.

\*\*\*

THE COURT: *Actually, it says, you must determine based on the consideration of all the evidence whether the defendant was a victim of repeated physical and psychological abuse by the victim, in the second paragraph. And I believe that [the jury] would have to so find.* . . . I'm not hearing the case law to be that you may use the Battered Spouse Syndrome to justify the killing of anyone. You know, you have to be using it to just . . . mitigate or excuse . . . if the individual who has died didn't abuse you in any way, I don't think that you're allowed to invoke the defense.

\*\*\*

THE COURT: I do believe that in the second paragraph you

5

have to be abused by the victim.

*\*\**

[DEFENSE COUNSEL]: I would ask . . . that in that second paragraph, that it reads, you must determine based on a [consideration] of all of the evidence whether the defendant was a victim of repeatedly physical and psychological abuse by the victim *and others*, and if so, whether she suffered from Battered Spouse Syndrome.

*\*\**

THE COURT: Well, what if they find that . . . the defendant was a victim of abuse by others but not the victim? It doesn't really matter whether they believe the testimony of her abuse of others if they believe that she was abused by the victim; right?

[DEFENSE COUNSEL]: Well, I think it could . . . matter in the sense that her reaction may be affected by the abuse by the others piling onto the abuse by the victim.

THE COURT: But that would assume that there was repeated psychological abuse by the victim; right?

[DEFENSE COUNSEL]: Yeah . . . and that's why the language I suggest would include both, not just one. I don't think she can rely on solely abuse by others, but if it lists both the victim and others, then that's not relying solely on the abuse by others against her.

[THE STATE]: But she is not allowed to murder her current boyfriend because four boyfriends ago beat her up. And that's what that instruction would be saying."

Before the court gave the instruction to the jury, defense counsel noted her objection

for the second time as follows:

"[DEFENSE COUNSEL]: For the record, . . . the defense requested in the Battered Spouse Syndrome instruction that . . . where the instruction reads that if it was a victim of repeated

6

physical and psychological abuse the Court indicated by the victim, we did make a request that and others be included. I would note our objection to—

THE COURT: Right. *And I concluded because the statute requires that there be a finding by the jury that this victim had engaged in repeated physical and psychological abuse of the victim* because otherwise that Battered Spouse Syndrome doesn't apply. I will not in any way restrict your argument because [the instruction] goes on to say that you have to determine, based upon the consideration of all the evidence, whether [appellant] was a victim of repeated physical and psychological abuse by the victim and if so whether she suffered from Battered Spouse Syndrome. My understanding is that we heard the testimony of other acts of abuse in aiding us in deciding whether she suffered from Battered Spouse Syndrome. So I think your argument will clear it up if it's otherwise unclear. So I'll note your exception."

The jury convicted appellant on the charges, and this timely appeal followed.

II.

Although the primary issue in this case is the jury instruction on Battered Spouse Syndrome, interpretation of Maryland Code, Courts and Judicial Proceedings Article ("CJP"), § 10-916—*i.e.*, the Maryland statute on "Battered Spouse Syndrome"—is our starting place. The statute reads as follows:

> "(a) *Definitions*. — (1) In this section the following words have the meanings indicated.
> (2) 'Battered Spouse Syndrome' means the psychological condition of a victim of repeated physical and psychological abuse by a spouse, former spouse, cohabitant, or former cohabitant which is also recognized in the medical and scientific community as the 'Battered Woman's Syndrome'.
> (3) 'Defendant' means an individual charged with:
> (i) First degree murder, second degree murder,

7

manslaughter, or attempt to commit any of these crimes; or

(ii) Assault in the first degree.

(b) *Admissibility of evidence*. — Notwithstanding evidence that the defendant was the first aggressor, used excessive force, or failed to retreat at the time of the alleged offense, when the defendant raises the issue that the defendant was, at the time of the alleged offense, suffering from the Battered Spouse Syndrome as a result of the past course of conduct of the individual who is the victim of the crime for which the defendant has been charged, *the court may admit* for the purpose of explaining the defendant's motive or state of mind, or both, at the time of the commission of the alleged offense:

(1) Evidence of repeated physical and psychological abuse of the defendant perpetrated by an individual who is the victim of a crime for which the defendant has been charged; and

(2) Expert testimony on the Battered Spouse Syndrome."

(Emphasis added).

Before this Court, appellant argues that the trial court's jury instruction on Battered Spouse Syndrome was an incorrect statement of law for two reasons. First, appellant contends that the court's instruction incorrectly required the jury *to make a predicate finding that the accused was the subject of repeated physical and psychological abuse* by the victim *before* it could consider expert testimony on Battered Spouse Syndrome. Appellant argues that the court's instruction confuses the standard for *admissibility*—which is a question of law to be decided by the trial court—with a predicate factual finding that a jury must make to consider evidence of Battered Spouse Syndrome—on which the statute is silent. In sum, appellant concludes that "[n]othing in the statute requires the jury to actually find that the defendant was the victim of repeated physical and psychological

8

abuse by the victim in order to consider expert testimony on Battered Spouse Syndrome."

Thus, argues appellant, the court's instruction has no basis in Maryland law. In appellant's view, once a trial court (1) finds that a defendant has made a foundational showing of repeated physical and psychological abuse by the victim and (2) admits the evidence of Battered Spouse Syndrome, the jury from that point on may consider the admitted evidence to determine whether the state-of-mind element of self-defense is met.

Second, appellant contends that the instruction asked the jury to disregard, contrary to law, evidence of past abuse by individuals *other than* Mr. Hunter when considering whether appellant suffered from Battered Spouse Syndrome. Appellant argues that the trial court erroneously defined Battered Spouse Syndrome as a psychological condition caused by repeated abuse by the victim. Alternatively, appellant argues that the court's instruction was confusing and likely led the jury to believe erroneously that evidence of past abuse by others was legally irrelevant for explaining appellant's motive or state of mind.

The State argues that the court's jury instruction on Battered Spouse Syndrome was a correct statement of law and hence within the court's discretion. Regarding the court's instruction that the jury *must find* that appellant was abused by the victim before it could consider the admitted expert testimony on Battered Spouse Syndrome, the State contends that it stated the law correctly.

Regarding evidence of past abuse *by others*, the State argues that the court's instruction correctly asked the jury to determine "based upon a consideration of *all the evidence*"—which the State points out *includes* evidence of past abuse by others—whether appellant suffered from Battered Spouse Syndrome and how that could have affected her

9

motive or state of mind.

## III.

On review of a jury instruction, we consider whether the instruction was generated by the evidence, *whether it was a correct statement of the law*, and whether it was covered elsewhere by the instructions given. *Johnson v. State*, 223 Md. App. 128, 138, 115 A.3d 668, 674 (2015) (emphasis added). A misstatement of law in a jury instruction constitutes reversible error unless the State proves, beyond a reasonable doubt, that the error did not play *any role* in the jury's verdict, *i.e.*, that it was harmless. *Porter v. State*, 455 Md. 220, 234, 166 A.3d 1044, 1052 (2017). "[I]nstructions which are ambiguous, misleading, or confusing to jurors can never be classed as noninjurious." *Battle v. State*, 287 Md. 675, 685, 414 A.2d 1266, 1271 (1980). In evaluating whether a jury instruction was erroneous, questions of statutory interpretation are reviewed *de novo*. *Wallace-Bey*, 234 Md. App. at 548, 172 A.3d at 1033.

We hold that the jury instruction on Battered Spouse Syndrome was erroneous and unclear, constituting reversible error. Primarily, the instruction reflected an erroneous interpretation of the statute and instructed the jury, before it could consider the defense of self-defense and Battered Spouse Syndrome, to *first* find that the defendant was the subject of repeated physical and psychological abuse by the victim. The Battered Spouse Syndrome statute, CJP § 10-916(b), addresses *admissibility* of the evidence and provides that the court *may admit* evidence of abuse notwithstanding traditional notions of self-defense, both imperfect and perfect. The statute reads, in pertinent part, as follows:

10

> "[W]hen the defendant raises the issue that the defendant was, at the time of the alleged offense, suffering from the Battered Spouse Syndrome as a result of the past course of conduct of the individual who is the victim of the crime for which the defendant has been charged, *the court may admit* for the purpose of explaining the defendant's motive or state of mind . . . ."

(Emphasis added). *See also Porter*, 455 Md. at 226, 166 A.3d at 1048 (citing CJP § 10-916(b)) ("Maryland law allows a woman on trial for harming her abuser to present evidence explaining battered spouse syndrome and its psychological effects regardless of whether she was the first aggressor, used excessive force, or failed to retreat.").

To "raise the issue" of Battered Spouse Syndrome, a defendant must produce "some evidence" that the victim caused the defendant to suffer from Battered Spouse Syndrome. *See, e.g.*, *Dykes v. State*, 319 Md. 206, 215, 571 A.2d 1251, 1256 (1990) (discussing the showing required to raise the issue of self-defense). Whether the defendant has adequately raised the issue of Battered Spouse Syndrome is a question of law to be decided by the trial court. *Id.* at 221, 571 A.2d at 1259. Once a trial court determines that the defendant has adequately raised the issue, it has the discretion to admit, for the jury's consideration, the evidence of repeated abuse of the defendant by the victim and expert testimony on Battered Spouse Syndrome. CJP § 10-916(b). In the case at hand, the trial court determined that appellant had adequately raised the issue and admitted the expert testimony.

Hence, the jury could consider that evidence as it bore on the defense of self-defense without first making (and agreeing upon) a predicate finding. After admitting the evidence, however, the trial court erred in instructing the jury to make a predicate finding before the

11

jury could consider the evidence of Battered Spouse Syndrome. The court's instruction, in pertinent part, read as follow:

> "*You must determine*, based on a consideration of all the evidence, *whether* the Defendant was a victim of repeated physical and psychological abuse by the victim, *and if so whether* she suffered from Battered Spouse Syndrome. *If you determine* that the Defendant suffered from Battered Spouse Syndrome, *then* you should consider this evidence for the purpose of explaining the Defendant's motive or state of mind[.]"

(Emphasis added). This instruction confuses the statute's standard for admissibility of evidence—a matter for the court to find prior to admission—and passes it onto the jury as a further condition on their actual consideration of the admitted evidence. The legislative history of the statute makes it clear that the statute speaks to *admissibility* of evidence of Battered Spouse Syndrome by a trial court. When the General Assembly enacted the Battered Spouse Syndrome statute in 1991, the Senate Judicial Proceedings Committee Floor Report noted as follows:

> "According to testimony on the crossfiled Senate bill, while courts are currently permitted to admit evidence of the battered spouse syndrome, some judges will not admit it; therefore, such evidence is not admitted equally in all jurisdictions. This bill would clarify that *the court has discretion to admit* evidence of repeated physical and psychological abuse of the defendant by the alleged victim and expert testimony on the battered spouse syndrome."

S. Judicial Proceedings Comm., Floor Report on House Bill 49, 401st Sess. (Md. 1991) (Emphasis added); *see also Porter*, 455 Md. at 238, 166 A.3d at 1055 (citing CJP § 10-916(b)) ("According to the Senate Judicial Proceedings Committee Floor Report, the intent of the statute was to 'clarify that the court has discretion to admit evidence of repeated

12

physical and psychological abuse of the defendant by the alleged victim and expert testimony on the battered spouse syndrome.'").

In addition to the erroneous interpretation of the statute, the court's instruction sent mixed messages to the jury. The instruction stated that "a person who is a victim of repeated psychological abuse *by [the] victim* may suffer from a psychological condition called Battered Spouse Syndrome." The instruction subsequently asked the jury to "determine, based upon a consideration of *all the evidence*, whether the Defendant was a victim of repeated physical and psychological abuse by the victim, and if so whether she suffered from Battered Spouse Syndrome." Next, the instruction stated, "[i]f you determine that the Defendant suffered from Battered Spouse Syndrome then you should consider *this evidence* for the purpose of explaining the Defendant's motive or state of mind . . . ." The court's instruction was unclear and potentially misleading as to what, if any, effect past abuse may have had on appellant's state of mind, even though the court had admitted appellant's expert witness testimony on her past abuse and its effect on her state of mind.

The State argues that any error in the Battered Spouse Syndrome instruction was harmless beyond a reasonable doubt because appellant was convicted only of voluntary manslaughter—*i.e.*, the best result that she could have received from the jury even under a correct instruction. In the State's view, Battered Spouse Syndrome is relevant only for establishing imperfect self-defense, which the jury credited and gave appellant the benefit of, and hence, a different instruction could not have reduced further appellant's conviction of voluntary manslaughter.

We disagree. Maryland case law is clear that Battered Spouse Syndrome is relevant to both imperfect *and* perfect self-defense. If credited, "the [Battered Spouse S]yndrome evidence would then play its proper role in explaining why and how, in light of that pattern of abuse, the defendant could honestly, and perhaps *reasonably*, perceive an imminent threat of immediate danger." *State v. Smullen*, 380 Md. 233, 273, 844 A.2d 429, 453 (2004) (emphasis added); *see also Wallace-Bey*, 234 Md. App. at 532, 172 A.3d at 1023 ("Maryland law recognizes that evidence of the psychological condition known as battered spouse syndrome may be relevant to the state-of-mind elements of *perfect* and imperfect self-defense." (Emphasis added)); *Banks v. State*, 92 Md. App. 422, 429, 608 A.2d 1249, 1253 (1992) ("[E]vidence of the Battered Spouse Syndrome is offered in support of the state of mind element of *perfect* or imperfect self-defense, *i.e.*, it is offered to prove the honesty and *reasonableness* of the defendant's belief that he or she was in imminent danger at the time of the offense." (Emphasis added)).

We reverse and remand for a new trial.

**JUDGMENTS OF THE CIRCUIT COURT FOR WICOMICO COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR A NEW TRIAL. COSTS TO BE PAID BY WICOMICO COUNTY.**